# EXHIBIT A

**SUMMONS - CIVIL**
JD-CV-1 Rev. 4-16
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. §§ 3-1 through 3-21, 8-1, 10-13

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

**See other side for instructions**

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.

☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.

☐ "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed (Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk (with area code) | Return Date (Must be a Tuesday) | | |
|---|---|---|---|---|
| 20 Franklin Sq, New Britain, CT 06051 | ( 860 )515-5180 | 7 Month | 11 Day | 2017 Year |

| ☒ Judicial District  ☐ Housing Session | ☐ G.A. Number: | At (Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349) **New Britain** | Case type code (See list on page 2) Major: T   Minor: 90 |
|---|---|---|---|

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) **Gold & Levy, 21 Oak Street, Suite 300, Hartford, CT 06106** | Juris number (to be entered by attorney only) 100291 |
|---|---|

| Telephone number (with area code) ( 860 ) 549-5152 | Signature of Plaintiff (if self-represented) |
|---|---|

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book.  ☐ Yes  ☒ No | Email address for delivery of papers under Section 10-13 (if agreed to) |
|---|---|

| Number of Plaintiffs: 1 | Number of Defendants: 5 | ☒ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name (Last, First, Middle Initial) and Address of Each party (Number; Street; P.O. Box; Town; State; Zip; Country, if not USA) | |
|---|---|---|
| First Plaintiff | Name: **Noelle Bates** Address: 55 Richards Avenue, Wolcott, CT 06716 | P-01 |
| Additional Plaintiff | Name: Address: | P-02 |
| First Defendant | Name: **City of Bristol** Address: 111 N. Main Street, Bristol, CT 06010 | D-01 |
| Additional Defendant | Name: **Kenneth Cockayne** Address: 111 N. Main Street, Bristol, CT 06010 / 36 Allen Street, Bristol, CT 06010 (residence) | D-02 |
| Additional Defendant | Name: **Diane Ferguson** Address: 111 N. Main Street, Bristol, CT 06010 | D-03 |
| Additional Defendant | Name: **Edward Krawiecki** Address: 111 N. Main Street, Bristol, CT 06010 | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at www.jud.ct.gov under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed (Sign and "X" proper box) | ☒ Commissioner of the Superior Court  ☐ Assistant Clerk | Name of Person Signing at Left **Katherine L. Matthews** | Date signed 6/5/2017 |
|---|---|---|---|

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

For Court Use Only

| I certify I have read and understand the above: | Signed (Self-Represented Plaintiff) | Date | Docket Number |
|---|---|---|---|

(Page 1 of 2)

**CIVIL SUMMONS**
**CONTINUATION OF PARTIES**
JD-CV-2   Rev. 9-12

STATE OF CONNECTICUT
**SUPERIOR COURT**

First named Plaintiff *(Last, First, Middle Initial)*
**Bates, Noelle**

First named Defendant *(Last, First, Middle Initial)*
**City of Bristol**

## Additional Plaintiffs

| Name *(Last, First, Middle Initial, if individual)* | Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|---|
| | | 03 |
| | | 04 |
| | | 05 |
| | | 06 |
| | | 07 |
| | | 08 |
| | | 09 |
| | | 10 |
| | | 11 |
| | | 12 |
| | | 13 |

## Additional Defendants

| Name *(Last, First, Middle Initial, if individual)* | Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|---|
| **Cockayne Lamarre, Cindy, 301 Old Orchard Road, Bristol, CT 06010** | | 05 |
| | | 06 |
| | | 07 |
| | | 08 |
| | | 09 |
| | | 10 |
| | | 11 |

| | | FOR COURT USE ONLY - File Date |
|---|---|---|
| | 12 | |
| | 13 | |
| | 14 | Docket number |

**CIVIL SUMMONS-Continuation**

RETURN DATE: JULY 11, 2017          :     SUPERIOR COURT

NOELLE BATES                        :     J.D. OF NEW BRITAIN

V.                                  :

CITY OF BRISTOL, DIANE
FERGUSON, KENNETH
COCKAYNE, EDWARD
KRAWIECKI, and CINDY
COCKAYNE LAMARRE                    :     JUNE 5, 2017

## COMPLAINT

1.     This is an action to redress the sexual harassment and retaliation suffered by the Plaintiff in violation of Sections 46a-60 of the Connecticut General Statutes and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

2.     The Plaintiff is authorized to commence a civil action in the subject court pursuant to Section 46a-100 of the Connecticut General Statutes.

3.     The Plaintiff has exhausted her administrative remedies by timely filing complaints with both the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunities Commission ("EEOC").

4.     Plaintiff has filed the instant action within 90 days of receiving her release of jurisdiction from the CHRO and the EEOC; the five releases of jurisdiction are attached hereto and are hereby incorporated as if fully set forth herein.

1

## The Parties:

5.      The Plaintiff, Noelle Bates, is a legal secretary employed by the City of Bristol Connecticut, who works in the Office of the Bristol Corporation Counsel.

6.      The Plaintiff has been so employed by the City of Bristol since 2009.

7.      The Defendant, City of Bristol, is a Connecticut municipality, having a business address of 111 North Main Street, Bristol, Connecticut, 06010.

8.      The City of Bristol employs at least 300 people.

9.      The Defendant, Diane Ferguson, is the Personnel Director of the City of Bristol, having a business address of 111 North Main Street, Bristol, Connecticut, 06010.

10.     The Defendant, Kenneth Cockayne, is the Mayor of the City of Bristol, having a business address of 111 North Main Street, Bristol, Connecticut 06010.

11.     The Defendant, Edward Krawiecki, is the Corporation Counsel for the City of Bristol, having a business address of 111 North Main Street, Bristol, Connecticut 06010.

12.     The Defendant, Cindy Cockayne Lamarre, is a Commissioner of the City of Bristol Zoning Commission, an appointed official of the City of Bristol, having a home address of 301 Old Orchard Road, Bristol, Connecticut 06010.

## Facts:

13.     The Plaintiff worked for the City of Bristol as a Legal Secretary, in the Office of the Bristol Corporation Counsel, since February 2009.

2

14.     Starting in or about April 2011, the Plaintiff was repeatedly subjected to a sexually hostile and discriminatory working environment.

15.     Prior to April 2011, the Plaintiff made a claim before the City of Bristol Claims Committee, seeking reimbursement for property damage to the Plaintiff's vehicle that occurred on City property.

16.     At that time, Defendant Cockayne was an elected Bristol City Councilor, serving on the City of Bristol Claims Committee.

17.     On or about the April 2011 City Council meeting, the Plaintiff's property damage claim was approved to be paid by the Bristol City Council.

18.     Subsequently, Defendant Cockayne told the Plaintiff that he was responsible for the Plaintiff's property damage claim being paid by the City.

19.     Shortly after this, starting on or about August 2011, Defendant Cockayne asked the Plaintiff several times to accompany him to nearby Birge Pond, "just to talk"; the implication was that the Plaintiff owed Defendant Cockayne for his actions in connection with the Plaintiff's property damage claim, and that spending time with him was a way to pay him back.

20.     The Plaintiff declined Defendant Cockayne's invitations to spend time with him during August and September of 2011.

3

21.    The Plaintiff continued to work at the Office of the Bristol Corporation Counsel as a legal secretary, and the Plaintiff continued to interact with Defendant Cockayne in a professional capacity only.

22.    Thereafter, the Plaintiff did subsequently develop a non-sexual friendship with Defendant Cockayne.

23.    Thereafter, Defendant Cockayne began to act in an inappropriate manner towards the Plaintiff, making unwelcome sexual advances, requesting sexual favors, engaging in conduct of a sexual nature towards the Plaintiff, and sexually harassing the Plaintiff as set forth herein:

24.    On or about November 2011:

    a.   The Plaintiff traveled to Defendant Cockayne's personal business office, for the purpose of delivering City Council-related materials to him;

    b.   When the Plaintiff entered his office, Defendant Cockayne was seated at his desk, behind a computer monitor, with the display screen facing toward Defendant Cockayne and away from the Plaintiff;

    c.   Defendant Cockayne told the Plaintiff to come around his desk and look at what was on his computer screen, and the Plaintiff complied;

    d.   As the Plaintiff stepped around his desk, the Plaintiff saw that Defendant Cockayne was watching a pornographic video;

    e.   Defendant Cockayne grabbed the Plaintiff by the hips, and pulled the Plaintiff down on to his lap.

    f.   The Plaintiff rejected Defendant Cockayne's advances, pushing his hands off of her, getting up and leaving the office.

4

25.     In 2012, Defendant Cockayne stated to the Plaintiff, in front of her colleague, Assistant Corporation Counsel Richard Lacey, "I can sexually harass you and there is nothing you can do about it, because I am an elected official and not a City employee."

26.     On or about October 24, 2012, at a City meeting, Defendant Cockayne told then-City Councilor, Mr. Kevin Fuller, that Mr. Fuller should be careful not to be caught "sexually harassing" the Plaintiff, as there was a tape recorder running.

27.     On or about October 24, 2013:

   a.   The Plaintiff attended an event at Chippanee Golf Club in Bristol, Connecticut with the Plaintiff's colleagues from the Office of the Bristol Corporation Counsel and with Defendant Cockayne;

   b.   At that event, in front of the Plaintiff's colleagues from the Office of the Bristol Corporation Counsel, Defendant Cockayne put his hands up the Plaintiff's skirt;

   c.   The Plaintiff rejected Defendant Cockayne's sexual advances, pushing Defendant Cockayne's hands away.

28.     The foregoing actions of Defendant Cockayne were unwelcome and were not reciprocated by the Plaintiff.

29.     The Plaintiff did not make any claims of sexual harassment or assault immediately following these events, because she was afraid to make a claim against Defendant Cockayne.

30.     In particular, the Plaintiff was concerned that her claims would not be investigated, and that Defendant Cockayne would retaliate against the Plaintiff for making such claims.

5

31.     On or about November 2013, Defendant Cockayne was subsequently elected to the office of the Mayor of the City of Bristol.

32.     In or about December 2013, Defendant Cockayne stated to the Plaintiff, in front of her colleague, Attorney Richard Lacey, "I can sexually harass you and there is nothing you can do about it, because the Mayor is an elected official and not a City employee."

33.     Shortly thereafter, Defendant Cockayne bragged to the Plaintiff that, now that he was the Mayor, women were "falling all over" him; however, he stated that he was going to focus on being the Mayor.

34.     The Plaintiff took from these statements that Defendant Cockayne would no longer be directing his attentions toward the Plaintiff and the Plaintiff was relieved.

35.     In or about April 2014:

     a.  The Plaintiff was directed by Defendant Cockayne to serve as the recording secretary for the public meetings of the Memorial Boulevard School Task Force;

     b.  This was within the scope of the Plaintiff's employment;

     c.  At all times relevant hereto, the Memorial Boulevard School Task Force was chaired by a Bristol City Councilor who was a political opponent of Defendant Cockayne, and Defendant Cockayne was openly antagonistic toward her;

     d.  As the Plaintiff continued to serve as the recording secretary for the Memorial Boulevard School Task Force, Defendant Cockayne began to act suspicious, accusing, aggressive, and hostile towards the Plaintiff.

36.     Also in or about April 2014:

6

    a.   The Plaintiff was requested by her colleague, Attorney Richard Lacey, to attend the meetings of the Bristol Code Enforcement Committee;

    b.   Part of the Plaintiff's job duties involved communicating with people who were subject to the Committee's enforcement activities and collecting payments for liens that had been filed by the Committee;

    c.   Therefore, it was stated that the Plaintiff's presence at the Committee meetings would assist and promote the function of the Bristol Code Enforcement Committee;

    d.   Starting in or about April 2014 and continuing through 2015, the Plaintiff regularly attended the meetings of the Bristol Code Enforcement Committee;

    e.   The Bristol Code Enforcement Committee were also chaired by the same Bristol City Councilor who was a political opponent of Defendant Cockayne, and towards whom the Defendant Cockayne was openly antagonistic.

37.    On or about January 2015:

    a.   The Plaintiff's direct supervisor, City of Bristol Corporation Counsel Edward Krawiecki, approached the Plaintiff in her office;

    b.   Defendant Krawiecki stated that Defendant Cockayne was angry that the Plaintiff was attending the Bristol Code Enforcement Committee meetings;

    c.   Defendant Krawiecki told the Plaintiff that Defendant Cockayne wanted to know why the Plaintiff was attending the Bristol Code Enforcement Committee meetings;

    d.   The Plaintiff explained to Defendant Krawiecki that Attorney Lacey had asked the Plaintiff to attend the meetings.

38.    In or about April 2015:

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

    a. The Plaintiff attended a local "Wine and Jazz" charity event;

    b. Also in attendance was the same Bristol City Councilor who was a political opponent of Defendant Cockayne, and towards whom the Defendant Cockayne was openly antagonistic;

    c. Unbeknownst to the Plaintiff, while she was at the said event, photographs were taken of her speaking with the said Bristol City Councilor;

    d. The following day, said photographs were anonymously delivered to the Plaintiff at her workplace, by sliding them under the door;

    e. The Plaintiff found these anonymous photographs to be threatening and harassing, and in retaliation for the Plaintiff's act of speaking to the Bristol City Councilor, Defendant Cockayne's political opponent, at the charity event.

39.   On or about July 27, 2015:

    a. Defendant Cockayne removed the Plaintiff from her position as the recording secretary for the Memorial Boulevard School Task Force;

    b. Defendant Cockayne did not, thereafter, reappoint the Plaintiff to that position;

    c. Plaintiff's removal from this position caused her to suffer a decrease in her wages.

40.   On or about October 6, 2015:

    a. Defendant Cockayne requested from the Plaintiff's direct supervisor, Defendant Krawiecki, that the Plaintiff provide Defendant Krawiecki with certain records that were generated in the course of the Plaintiff's work as a legal secretary;

    b. On or about October 6, 2015, Defendant Krawiecki requested that the Plaintiff provide him with a history of the searches that the Plaintiff

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

conducted on an electronic search engine and database called "CLEAR", operated by Westlaw;

c.  The CLEAR program permits authorized users to search out and obtain certain personal information about individuals, which may be used by those in the legal field for certain purposes;

d.  Part of the Plaintiff's work duties included performing such searches on CLEAR, to obtain information that would be used by the attorneys in the Office of the Bristol Corporation Counsel for their legal work;

e.  At no time did the Plaintiff misuse CLEAR;

f.  On or about October 6, 2015, the Plaintiff contacted Westlaw, and requested the entire history of the Plaintiff's CLEAR searches;

g.  Over the telephone, the Plaintiff was told by Westlaw that it only retained searches from the past 7 days.

h.  Defendant Krawiecki was present during the aforesaid conversation with Westlaw and listened to the same;

i.  On November 4, 2015, Defendant Krawiecki approached the Plaintiff and stated, "the Mayor [Defendant Cockayne] wants all the searches you ran on CLEAR because he thinks you've done something wrong";

j.  During this conversation, the Plaintiff reminded Defendant Krawiecki that Westlaw had stated that it could not produce the requested searches;

k.  During this conversation, Defendant Krawiecki responded to the Plaintiff that, "the Mayor doesn't care, just get him the searches or we will have the Bristol Police Department get them";

l.  The Plaintiff then worked with Westlaw to obtain as much search information they were able to produce;

m.  The Plaintiff put the CLEAR search records into a folder which she left on Defendant Krawiecki's desk;

9

n.  On November 6, 2015, Defendant Cockayne came into the Plaintiff's office at work, and demanded to know where the CLEAR reports were that he had requested;

o.  The Plaintiff provided Defendant Cockayne with a copy of the CLEAR reports that the Plaintiff had obtained, in response to his request for the same, on November 6, 2015.

41.  On or about October 20, 2015:

a.  The Plaintiff attended a Connecticut Conference of Municipalities meeting, together with the Plaintiff's colleagues, Attorney Lacey and Attorney Conlin;

b.  Thereafter, on or about October 27, 2015, Defendant Krawiecki approached the Plaintiff in the Plaintiff's office, and stated that "the Mayor [Defendant Cockayne] is mad at you and wants you gone";

c.  Defendant Krawiecki then told the Plaintiff that Defendant Cockayne wanted to know what right the Plaintiff had to go to the Connecticut Conference of Municipalities meeting;

d.  The Plaintiff replied that Defendant Krawiecki had authorized the Plaintiff's attendance before the meeting occurred.

42.  On November 11, 2015:

a.  The Plaintiff made a statement to her colleague, Attorney Lacey;

b.  The Plaintiff reported to Attorney Lacey that she felt Defendant Cockayne had engaged in misconduct towards the Plaintiff;

c.  In particular, the Plaintiff reported that Defendant Cockayne had touched her inappropriately during the aforementioned event at Chippanee Golf Course;

d.  The Plaintiff complained that, following the incident at Chippanee Golf Course, as aforesaid, Defendant Cockayne was now acting out against

10

the Plaintiff by demanding an investigation of the Plaintiff's CLEAR requests;

e.   The Plaintiff stated that this conduct by Defendant Cockayne was harassing and retaliatory behavior against her;

f.   Upon information and belief, Attorney Lacey reported the Plaintiff's statement to Personnel Director, Defendant Diane Ferguson, and to Defendant Krawiecki.

g.   Subsequently, the Plaintiff made the same report and complaints to her colleague, Assistant Corporation Counsel Melissa Simonik of the Office of the Bristol Corporation Counsel;

h.   Upon information and belief, Attorney Simonik did not report this to Defendant Ferguson.

43.   Upon information and belief, on or about November 12, 2015, Defendant Ferguson responded to Attorney Lacey's aforementioned report, by ordering Attorney Lacey to "shut up".

44.   On or about November 13, 2015:

a.   The Plaintiff met with Defendant Ferguson regarding the Plaintiff's foregoing statement to Attorney Lacey;

b.   Upon information and belief, Defendant Ferguson also met with and interviewed Attorney Lacey and Defendant Cockayne regarding the same.

45.   On or about November 25, 2015:

a.   The Plaintiff met with Defendant Ferguson in her office;

b.   During this meeting, Defendant Ferguson told the Plaintiff, "Nothing can be done to a mayor who sexually harasses a municipal employee, so what do you want me to do?"

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

46. On or about November 30, 2015:

   a. The Plaintiff received correspondence from Defendant Ferguson summarizing the Plaintiff's allegations of retaliatory conduct by Defendant Cockayne;

   b. This correspondence did not mention the Plaintiff's claims of sexual misconduct and sexual harassment by Defendant Cockayne, which, as noted, had been previously reported to Attorney Lacey, Attorney Simonik, and Defendant Ferguson;

   c. Additionally, this correspondence reminded the Plaintiff that the Plaintiff was an "at will" employee, meaning that "the City of Bristol may terminate the employment relationship at any time, for any reason, with or without prior notice";

   d. Additionally, the letter recited a proposal for an "Acting Mayor" to investigate and determine whether the Plaintiff should be subject to any potential disciplinary action;

   e. Finally, the letter provided that, in the event the City brings in an outside entity to investigate the Plaintiff's harassment and retaliation claims, the Plaintiff was obligated to "describe with great detail the various types of behavior that have been alleged to have occurred over the last several years", and that a report would be generated by the investigator, which would be disclosed to the public at the end of his investigation.

47. On or about December 3, 2015:

   a. The Plaintiff informed Defendant Ferguson that the November 30, 2015 letter she sent the Plaintiff was threatening;

   b. As a result of the letter, the Plaintiff was concerned that her job would be in jeopardy if she continued to pursue the Plaintiff's claims of harassment and retaliation;

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

    c.   The Plaintiff was also concerned that the City would publicly share the details of the Plaintiff's private complaint about workplace harassment and retaliation;

    d.   The Plaintiff felt that Defendant Ferguson's correspondence was a direct attempt to discourage the Plaintiff from pursuing her claims of harassment and retaliation;

    e.   Defendant Ferguson's correspondence had a chilling effect on the Plaintiff.

48.    During December 2015 and January 2016:

    a.   Defendant Ferguson telephoned the Plaintiff several times to ask the Plaintiff, "do you really want to go through with this?"

    b.   The Plaintiff felt that Defendant Ferguson's telephone calls were a direct attempt to discourage the Plaintiff from pursuing the Plaintiff's claims of harassment and retaliation;

    c.   Defendant Ferguson's phone calls had a chilling effect on the Plaintiff.

49.    On or about December 1, 2015, there was a meeting with Defendant Cockayne and the attorneys from the Office of the Bristol Corporation Counsel; during this meeting Defendant Cockayne passed out the CLEAR reports, and they were reviewed line by line with Defendant Cockayne asking if there was a valid reason for each and every search the Plaintiff had performed.

50.    Upon information and belief, the conclusion reached at this December 1, 2015 meeting was that the Plaintiff had used CLEAR appropriately, and that each search was work-related.

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

51.     On or about December 3, 2015, the Plaintiff sent correspondence to Defendant Ferguson, stating that her November 30, 2015 letter to the Plaintiff did not reference the Plaintiff's complaints of sexual misconduct and sexual harassment by Defendant Cockayne, and the Plaintiff requested copies of her investigation notes on this topic.

52.     On or about December 4, 2015, the Plaintiff was informed by Defendant Ferguson that Defendant Ferguson would not release the investigation materials the Plaintiff requested from her, and that she did not put any such records into the Plaintiff's personnel file, as she maintained a second file that the Plaintiff did not have access to.

53.     On or about the evening of December 10, 2015:

  a.  The Plaintiff stood outside of Bristol City Hall with Charles Talmadge, speaking with him;

  b.  During this conversation, Mr. Talmadge and the Plaintiff observed that Defendant Cockayne and Defendant Ferguson were standing together on the roof of the neighboring City garage;

  c.  Defendant Cockayne appeared to be videotaping the Plaintiff's conversation with Mr. Talmadge, with Defendant Ferguson looking on;

  d.  The Plaintiff waved toward Defendant Ferguson and Defendant Cockayne, and they quickly ran from sight;

  e.  Minutes later, at the ground floor exit of the City garage, the Plaintiff saw Defendant Cockayne, and asked why he and Defendant Ferguson were videotaping the Plaintiff speaking with Mr. Talmadge;

  f.  Defendant Cockayne responded by stating that the Plaintiff was a good employee with a clean personnel file;

14

g. He asked the Plaintiff if they could "call it a truce";

h. Then Defendant Cockayne threatened the Plaintiff, stating that he was going to "tell lies to [the Plaintiff's] husband".

54. The next day, on or about December 11, 2015:

a. The Plaintiff spoke with her colleague, Attorney Conlin;

b. Attorney Conlin indicated to the Plaintiff that he knew about the videotape incident, as aforesaid;

c. The Plaintiff told Attorney Conlin that the conduct of Defendant Ferguson and Defendant Cockayne was wrong;

d. Attorney Conlin advised the Plaintiff to investigate whether the video cameras in front of the City garage had captured anything, and stated that the Plaintiff should commence a CHRO complaint.

55. Also on December 11, 2015:

a. Mr. Talmadge and the Plaintiff met with City of Bristol Acting Police Chief, Brian Gould;

b. The Plaintiff explained the videotape incident and the threat that Defendant Cockayne had made toward the Plaintiff, as aforesaid;

c. The Plaintiff asked that any of the City garage security footage from that time period be retained;

d. Acting Chief Gould suggested that the Plaintiff present him with a FOIA request asking him to furnish the Plaintiff with the same.

56. Also on December 11, 2015:

a. Acting Chief Gould offered to accompany the Plaintiff to meet with Defendant Ferguson to discuss the videotaping incident, and the Plaintiff accepted;

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

      b. During this meeting with Defendant Ferguson and Acting Chief Gould, the Plaintiff confronted Defendant Ferguson about the videotaping incident and about the threats Defendant Cockayne had made to the Plaintiff thereafter;

      c. In response, Defendant Ferguson did not deny that these incidents had occurred, but merely stated "we're not out to get you";

      d. Defendant Ferguson also confirmed that the Plaintiff had not done anything wrong.

57.    On December 28, 2015, the Plaintiff met with Acting Chief Gould, who provided the Plaintiff with the statutes pertaining to stalking, harassment and intimidation, and explained each to the Plaintiff.

58.    On or about January 2016, Defendant Ferguson informed the Plaintiff that Defendant Ferguson had advised Defendant Cockayne that he was not allowed to come into the Office of Corporation Counsel, which is the Plaintiff's primary workplace within City Hall.

59.    On or about January 5, 2016:

      a. The Plaintiff contacted Acting Chief Gould;

      b. She asked Acting Chief Gould for a copy of the incident report from the Plaintiff's complaint about the videotaping incident;

      c. Acting Chief Gould responded that the Plaintiff would have to come in and make a formal statement in order to obtain an incident report.

60.    On or about January 6, 2016, Acting Chief Gould contacted the Plaintiff to explain the process of filing a formal complaint, and made arrangements for the Plaintiff to meet with Bristol Police Lieutenant Todd Kozaryn on January 8, 2016.

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

61.     On or about January 8, 2016:

    a.   The Plaintiff met with Lieutenant Kozaryn and reported the details of
       the videotaping incident to him;

    b.   Lieutenant Kozaryn stated that he had already spoken with both
       Defendant Ferguson and Defendant Cockayne, who had admitted to
       filming the Plaintiff while the Plaintiff spoke with Mr. Talmadge;

    c.   According to Lieutenant Kozaryn, "they were just joking" and
       Defendant Cockayne had already deleted the video from his cell phone;

    d.   Lieutenant Kozaryn told the Plaintiff that he had investigated a
       cellphone in Defendant Cockayne's possession, and could not locate
       such a video.

62.     Upon information and belief, Mr. Talmadge also met with Lieutenant Kozaryn on

or about January 8, 2016, and gave a statement to him reporting the details of the videotaping

incident.

63.     The evening of January 8, 2016, the Plaintiff received an anonymous letter advising

the Plaintiff to be careful dealing with Defendant Ferguson.

64.     On or about January 12, 2016:

    a.   The Plaintiff spoke with Lieutenant Kozaryn and informed him of the
       anonymous letter;

    b.   She also told Lieutenant Kozaryn that the City's Personnel Policy
       Manual provided that harassing someone after a complaint is made
       violates the law and is grounds for termination;

    c.   Lieutenant Kozaryn advised the Plaintiff to contact the Department of
       Labor;

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

    d. Lieutenant Kozaryn made an appointment for the Plaintiff to give a formal written statement on January 14, 2016.

65.    On January 14, 2016, the Plaintiff made a formal written statement during her meeting with Lieutenant Kozaryn.

66.    On January 26, 2016:

    a. The Plaintiff received a phone call from Acting Chief Gould, who stated that the Plaintiff's case had been turned over to Lieutenant Duval;

    b. Acting Chief Gould advised the Plaintiff that she should speak with Lieutenant Duval to obtain a copy of her incident report;

    c. The Plaintiff contacted Lieutenant Duval;

    d. Lieutenant Duval told the Plaintiff that he had submitted the incident report to Acting Chief Gould, and that Lieutenant Duval was waiting for Acting Chief Gould to sign off on it.

67.    On or about January 29, 2016:

    a. The Plaintiff called and emailed Acting Chief Gould;

    b. Acting Chief Gould responded to the Plaintiff that had signed off on the Plaintiff's incident report, and that he was sure that Lieutenant Duval would send it to the Plaintiff when it was ready.

68.    On or about February 3, 2016, the Plaintiff received an email from Lieutenant Duval stating that the Plaintiff could not have a copy of the incident report.

69.    On or about February 5, 2016, the Plaintiff emailed Acting Chief Gould to ask why the decision to provide the Plaintiff with a copy of the incident report had been reversed.

70.    On or about February 9, 2016:

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

      a.  The Plaintiff saw Acting Chief Gould in person at City Hall;

      b.  He stated that if, after investigation, it was determined that a crime did not occur, a complaint would be considered uncorroborated and reports of such uncorroborated complaints could not be disclosed pursuant to FOIA;

      c.  The Plaintiff asked Acting Chief Gould how the Plaintiff's report could be "uncorroborated" when the videotaping incident was witnessed by Mr. Talmadge, who had given a sworn statement to the police, and when both Defendants Cockayne and Ferguson had admitted to Lieutenant Kozaryn that they had engaged in this videotaping activity;

      d.  Acting Chief Gould stated that he would ask Corporation Counsel for a legal opinion on this issue;

      e.  However, to date, no incident report has been provided to the Plaintiff.

71.    Despite the assurance by Defendant Ferguson in January 2016, Defendant Cockayne came into the Office of Corporation Counsel on four occasions in March 2016.

72.    The Plaintiff complained to Defendant Ferguson, who stated that Defendant Cockayne could come into the Plaintiff's office as needed.

73.    During 2016, the City of Bristol retained a consultant, Attorney Michael Rose, to investigate the Plaintiff's claims of sexual harassment and retaliation by Defendant Cockayne.

74.    On or about March 9, 2016 the Plaintiff met with Attorney Rose.

75.    On several occasions, the Plaintiff was told by City personnel that Defendant Cockayne wanted to terminate her:

      a.  On several occasions, the Plaintiff was told by Defendant Krawiecki that Defendant Cockayne "wanted [the Plaintiff] gone";

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

    b.  On several occasions, the Plaintiff was told by Attorney Lacey that Defendant Cockayne wanted the Plaintiff fired;

    c.  In or about March 2016, Nancy Bosse of the City of Bristol Office of the Treasurer, reported to the Plaintiff that she overheard Defendant Cockayne tell Defendant Ferguson, in City Hall, that Defendant Cockayne wanted the Plaintiff fired; Ms. Bosse heard Defendant Ferguson respond that Defendant Cockayne could not fire the Plaintiff without a reason.

76.    On or prior to March 21, 2016, the Plaintiff submitted a written request to the Bristol Charter Revision Commission, asking them to recommend to the City Council that a provision be added to the Bristol City Charter prohibiting sexual harassment.

77.    On or about March 21, 2016:

    a.  Defendant Krawiecki came into the Plaintiff's office and yelled at the Plaintiff for submitting this request to the Bristol Charter Revision Commission;

    b.  He stated that he was going to move the Plaintiff's office to a different location;

    c.  Defendant Krawiecki berated the Plaintiff for not reporting the Plaintiff's complaints directly to him;

    d.  He stated that a memorandum written by Attorney Lacey regarding the Plaintiff's complaints had been spread through City Hall, and he did not know how that happened;

    e.  He stated that City Hall was an "untenable place to work";

    f.  The Plaintiff agreed that Bristol City Hall was an untenable place to work, and told Defendant Krawiecki that every day she came into work "made [her] shake";

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

g.  Defendant Krawiecki responded, "well good, you should";

h.  The Plaintiff told Defendant Krawiecki that she deserved to work in a safe environment.

i.  Defendant Krawiecki responded, "I'm scared of you" and "I want you out of my office";

j.  Defendant Krawiecki further stated that he "was going to have a heart attack" over the Plaintiff, and that if he did, he was "going to file a complaint";

k.  The Plaintiff told Defendant Krawiecki that the Plaintiff wanted protection;

l.  Defendant Krawiecki responded to the Plaintiff by stating that he was the person who wanted protection.

78.  On or about March 28, 2016:

a.  The Plaintiff was in her office and overheard Defendant Krawiecki, Attorney Lacey, and Attorney Conlin discussing the investigation by Attorney Michael Rose into the Plaintiff's sexual harassment and retaliation complaints;

b.  She learned that Defendant Cockayne was now making untrue and defamatory comments about her;

c.  The Plaintiff was immediately uncomfortable and anxious;

d.  As a result, the Plaintiff had a panic attack and had to see a physician immediately.

e.  Plaintiff's physician put the Plaintiff on medical leave as a result of the stress and hostile environment of the Plaintiff's workplace;

f.  Thereafter, the Plaintiff gave Defendant Ferguson a copy of the note from the Plaintiff's physician regarding the Plaintiff's medical leave.

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

79.     On or about April 25, 2016, the Plaintiff was notified by the Plaintiff's physician,

Dr. Levinson, that Defendant Ferguson had contacted his office in an attempt to obtain the

Plaintiff's medical records, and that he refused to do so on the grounds that it would invade the

Plaintiff's medical privacy, in violation of HIPAA applicable privacy laws.

80.     Subsequently, the Plaintiff reported Defendant Ferguson's attempts to illegally

obtain the Plaintiff's medical records to the Department of Health & Human Services, Office for

Civil Rights, and to Senator Christopher Murphy, but was told that they did not have jurisdiction

over this activity.

81.     On or about July 5, 2016:

   a.  The Plaintiff learned that Defendant Ferguson contacted Westlaw to
       obtain access to the Plaintiff's CLEAR account, in order to look at the
       Plaintiff's usage reports and statistics;

   b.  The Plaintiff immediately reported Defendant Ferguson's attempt to
       access the Plaintiff's CLEAR account to Defendant Krawiecki, who
       stated that he would "look into it";

   c.  The Plaintiff told Defendant Krawiecki that this was additional
       harassment by Defendant Ferguson.

82.     On or about July 5, 2016, the Plaintiff received correspondence from Defendant

Ferguson., acknowledging that Defendant Ferguson had spoken to a Westlaw representative, and

stated that "there is nothing for [the Plaintiff] to be concerned about".

83.     On or about August 3, 2016:

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

    a.   A Special City Council meeting was called by Defendant Cockayne;

    b.   During this meeting, members of the City Council met privately with Attorney Rose during executive session;

    c.   Upon information and belief, Attorney Rose reported to them the details of his investigations, findings, and recommendations in connection with the Plaintiff's claims of harassment and retaliation by Defendant Cockayne;

    d.   After executive session was concluded, the Special City Council meeting was called back into public session;

    e.   At that time, Defendant Cockayne read a public statement aloud, wherein he stated that he and the Plaintiff had a relationship and that he expressed regret for it;

    f.   In his public statement, Defendant Cockayne erroneously implied that the relationship, as aforesaid, was sexual and consensual, though it was not.

84.    On and prior to August 3, 2016:

    a.   Defendant Cockayne revealed publicly that the Plaintiff was the "female employee" who filed claims of harassment and retaliation against him;

    b.   This disclosure by Defendant Cockayne of the Plaintiff's identity violated the Plaintiff's right to privacy, and was a clear violation of applicable law and City policies and procedures, and expressly contradicted the protections that Defendant Ferguson told the Plaintiff she was entitled to as a person who had claimed to suffer harassment and retaliation as a City of Bristol employee.

85.    On and after August 3, 2016, Defendant Cockayne made false statements to several

people stating that the Plaintiff had a sexual relationship with Defendant Cockayne that had ended

badly, that the harassment and retaliation claims the Plaintiff made against Defendant Cockayne

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

were baseless, and that the Plaintiff's claims were actually an attempt to "blackmail" Defendant

Cockayne.

86.  On and after August 3, 2016:

    a.  Defendant Cockayne Lamarre made numerous public statements about the Plaintiff that were defamatory, slanderous, and sexual in nature;

    b.  In particular, Defendant Cockayne Lamarre falsely asserted that the Plaintiff made a false report of sexual harassment about Defendant Cockayne, and that the Plaintiff had a consensual sexual relationship with Defendant Cockayne;

    c.  Based upon these false assertions, Defendant Cockayne Lamarre publicly called for the Plaintiff's employment at City Hall to be terminated.

87.  On or about August 9, 2016:

    a.  Attorney Michael Rose, the investigating consultant hired by the City, confirmed that Attorney Lacey had prepared a memorandum;

    b.  Attorney Michael Rose described the contents of the said memorandum to the Plaintiff, who had never seen it;

    c.  Upon information and belief, Attorney Lacey reported that Defendant Cockayne had approached Attorney Lacey and made several comments to Attorney Lacey about the Plaintiff that were of a defamatory and sexual nature;

    d.  Upon information and belief, Attorney Lacey reported that Defendant Cockayne told Attorney Lacey that, if the Plaintiff did not withdraw the Plaintiff's harassment and retaliation claims, Defendant Cockayne would share these statements publicly, and specifically stated that he would tell these lies to the Plaintiff's spouse for the purpose of ending the Plaintiff's marriage;

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

e.  Defendant Cockayne, upon information and belief, threatened to fire Attorney Lacey if Attorney Lacey did not succeed in convincing the Plaintiff to withdraw the Plaintiff's harassment and retaliation claims;

f.  Finally, Defendant Cockayne, upon information and belief, told Attorney Lacey that he should pass these threats on to the Plaintiff, so that the Plaintiff would withdraw the Plaintiff's harassment and retaliation claims against Defendant Cockayne.

88.   Also on or about August 9, 2016:

a.   The Plaintiff was informed by Attorney Michael Rose that Defendant Cockayne attempted to interfere with Attorney Rose's investigation of the Plaintiff's claims of harassment and retaliation, as aforesaid;

b.  The Plaintiff was informed by Attorney Michael Rose that the contents of Attorney Lacey's memorandum, as aforesaid, were corroborated by statements made by Defendant Cockayne directly to Attorney Rose, during the course of Attorney Rose's investigation.

89.   Since on or about July 2016:

a.  On several occasions, the Plaintiff has observed her coworker, the Office of Corporation Counsel Legal Administrative Assistant, looking through the Plaintiff's desk, and keeping track of the Plaintiff's work hours;

b.  The Plaintiff suspected that this coworker was engaging in these activities at the behest of Plaintiff's employer, and that this coworker was reporting the Plaintiff's work activities to her employer.

c.  On or about August 19, 2016, the Plaintiff had a conversation with this coworker; during which conversation, the coworker indicated that she was engaging in these activities on behalf of Plaintiff's employer;

d.  At that time, the Plaintiff accused the coworker of engaging in these activities on behalf of Plaintiff's employer, and the coworker did not deny that she was tracking and reporting the Plaintiff's work activities.

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

90.    The Plaintiff has suffered emotionally, physically and financially as a result of the foregoing conduct.

I.    **COUNT ONE: Violation of C.G.S. Section 46a-60(a)(1) - As to City of Bristol**

1-90.    Paragraphs 1 – 90 of the above are hereby made paragraphs 1-90 of this First Count as if fully set forth herein.

91.    The Plaintiff self-identifies as a female, and is therefore a member of a protected class pursuant to the Connecticut Fair Employment Practices Act, C.G.S. Section 46a-60(a)(1).

92.    The Defendant, City of Bristol, by and through its elected officials, employees and/or agents, has violated the provisions of Section 46a-60(a)(1) as aforesaid, by allowing a campaign of harassment, intimidation and discrimination against the Plaintiff because of her gender.

93.    By the above acts, the Defendant, by and through its elected officials, employees and/or agents, subjected the Plaintiff to unlawful discrimination based upon her sex.

94.    As a result of the said harassment, intimidation and discrimination, in violation of Section 46a-60(a)(1), as aforesaid, which imposes liability upon the employer, the Defendant, City of Bristol, the Plaintiff has suffered and will continue to suffer damages, including but not limited to, physical injury, mental and emotional distress, humiliation and embarrassment, anxiety, and attorney's fees.

II.    **COUNT TWO: Violation of C.G.S. Section 46a-60(a)(4) - As to City of Bristol**

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

1-91.   Paragraphs 1 – 91 of the First Count are hereby made paragraphs 1-91 of this Second Count as if fully set forth herein.

92.   The Defendant, City of Bristol, by and through its elected officials, employees and/or agents, has violated the provisions of Section 46a-60(a)(4) as aforesaid, by discriminating, threatening and retaliating against the Plaintiff because she opposed the discriminatory conduct by the Defendant, as aforesaid.

93.   The Defendant, City of Bristol, by and through its elected officials, employees and/or agents, has violated the provisions of Section 46a-60(a)(4) as aforesaid, by discriminating, threatening, intimidating and retaliating against the Plaintiff because she filed complaints with the Bristol Police Department, the CHRO, and the EEOC regarding the Defendants' conduct, as aforesaid.

94.   The Plaintiff's rejection of the aforementioned conduct and her report of the same to the Bristol Police Department, the CHRO, and the EEOC have been used as a basis for employment decisions that have adversely affected the Plaintiff.

95.   The aforementioned conduct has had the purpose or effect of substantially interfering with the Plaintiff's work performance.

96.   The aforementioned conduct has created an intimidating, hostile and offensive working environment.

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

97.     As a result of the said conduct, in violation of Section 46a-60(a)(4), as aforesaid, which imposes liability upon the employer, the Defendant, City of Bristol, the Plaintiff has suffered and will continue to suffer damages, including but not limited to, physical injury, mental and emotional distress, humiliation and embarrassment, anxiety, and attorney's fees.

**III.     COUNT THREE: Violation of C.G.S. Section 46a-60(a)(8) - As to City of Bristol**

1-91.   Paragraphs 1 – 91 of the First Count are hereby made paragraphs 1-91 of this Third Count as if fully set forth herein.

92.     The Defendant, City of Bristol, by and through its elected officials, employees and/or agents, has violated the provisions of Section 46a-60(a)(8), by sexually harassing the Plaintiff, including but not limited to making unwelcome sexual advances towards the Plaintiff, and by imposing unwelcome sexual contact upon the Plaintiff's person.

93.     Submitting to this sexual harassment, as aforesaid, was implicitly made a term or condition of the Plaintiff's employment.

94.     The Plaintiff's rejection of this sexual harassment, as aforesaid, was used as the basis for employment decisions adversely affecting the Plaintiff.

95.     The sexual harassment, as aforesaid, had the purpose and/or effect of substantially interfering with the Plaintiff's performance of her work.

28

96.    The sexual harassment, as aforesaid, had the purpose and/or effect of creating an intimidating, hostile and offensive working environment for the Plaintiff.

97.    As a result of the said conduct, in violation of Section 46a-60(a)(8), as aforesaid, which imposes liability upon the employer, the Defendant, City of Bristol, the Plaintiff has suffered and will continue to suffer damages, including but not limited to, physical injury, mental and emotional distress, humiliation and embarrassment, anxiety, and attorney's fees.

## IV.    COUNT FOUR: Violation of Title VII - As to City of Bristol

1-91.    Paragraphs 1 – 91 of the First Count are hereby made paragraphs 1-91 of this Fourth Count as if fully set forth herein.

92.    By the above acts, the Defendant created a sexually hostile, offensive and intimidating work environment.

93.    By the above acts, the Defendant subjected the Plaintiff to unlawful discrimination based upon her sex.

## V.    COUNT FIVE: Intentional Infliction of Emotional Distress - As to City of Bristol

1-91.    Paragraphs 1 – 91 of the First Count are hereby made paragraphs 1-91 of this Fifth Count as if fully set forth herein.

92.    The Defendant, by and through its elected officials, employees and/or agents, intended to inflict emotional distress upon the Plaintiff.

GOLD & LEVY · ATTORNEYS AT LAW · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

93.     The Defendant, its elected officials, employees and/or agents, knew or should have known that their conduct would cause the Plaintiff to suffer emotional distress.

94.     The emotional distress caused by the Defendant, its elected officials, employees and/or agents, was extreme and outrageous.

95.     As a result of these actions, the Plaintiff suffered and has continued to suffer, severe emotional distress, embarrassment and humiliation.

VI.     <u>COUNT SIX</u>: Invasion of Privacy - As to City of Bristol

1-91.   Paragraphs 1 – 91 of the First Count are hereby made paragraphs 1-91 of this Sixth Count as if fully set forth herein.

92.     All of the acts described herein were committed by the Defendant, by and through its elected officials, employees and/or agents, within the scope of their employment with the Defendant.

93.     The conduct, as described above, invaded Plaintiff's privacy by intruding upon her seclusion in a manner that would have been highly offensive to a reasonable person.

VII.    <u>COUNT SEVEN</u>: Violation of C.G.S. Section 46a-60(a)(1) - As to Defendant
        Cockayne

1-90.   Paragraphs 1 – 90 of the above are hereby made paragraphs 1-90 of this Seventh Count as if fully set forth herein.

GOLD & LEVY · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

91.     The Plaintiff self-identifies as a female, and is therefore a member of a protected class pursuant to the Connecticut Fair Employment Practices Act, C.G.S. Section 46a-60(a)(1).

92.     The Defendant has violated the provisions of Section 46a-60(a)(1) as aforesaid, by commencing a campaign of harassment, intimidation and discrimination against the Plaintiff because of her gender.

93.     By the above acts, the Defendant subjected the Plaintiff to unlawful discrimination based upon her sex.

94.     As a result of the said harassment, intimidation and discrimination, in violation of Section 46a-60(a)(1), as aforesaid, the Plaintiff has suffered and will continue to suffer damages, including but not limited to, physical injury, mental and emotional distress, humiliation and embarrassment, anxiety, and attorney's fees.

## VIII.   COUNT EIGHT: Violation of C.G.S. Section 46a-60(a)(4) - As to Defendant Cockayne

1-91.   Paragraphs 1 – 91 of the First Count are hereby made paragraphs 1-91 of this Eighth Count as if fully set forth herein.

92.     The Defendant has violated the provisions of Section 46a-60(a)(4) as aforesaid, by discriminating, threatening and retaliating against the Plaintiff because she opposed the discriminatory conduct by the Defendant, as aforesaid.

GOLD & LEVY · ATTORNEYS AT LAW · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

93.     The Defendant has violated the provisions of Section 46a-60(a)(4) as aforesaid, by discriminating, threatening, intimidating and retaliating against the Plaintiff because she filed complaints with the Bristol Police Department, the CHRO, and the EEOC regarding the Defendant's conduct, as aforesaid.

94.     The Plaintiff's rejection of the aforementioned conduct and her report of the same to the Bristol Police Department, the CHRO, and the EEOC have been used as a basis for employment decisions that have adversely affected the Plaintiff.

95.     The aforementioned conduct has had the purpose or effect of substantially interfering with the Plaintiff's work performance.

96.     The aforementioned conduct has created an intimidating, hostile and offensive working environment.

97.     As a result of the said conduct, in violation of Section 46a-60(a)(4), as aforesaid, the Plaintiff has suffered and will continue to suffer damages, including but not limited to, physical injury, mental and emotional distress, humiliation and embarrassment, anxiety, and attorney's fees.

IX.     **COUNT NINE**: Violation of C.G.S. Section 46a-60(a)(8) - As to Defendant Cockayne

1-91.   Paragraphs 1 – 91 of the First Count are hereby made paragraphs 1-91 of this Ninth Count as if fully set forth herein.

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

92.    The Defendant has violated the provisions of Section 46a-60(a)(8), by sexually harassing the Plaintiff, including but not limited to making unwelcome sexual advances towards the Plaintiff, and by imposing unwelcome sexual contact upon the Plaintiff's person.

93.    Submitting to this sexual harassment, as aforesaid, was implicitly made a term or condition of the Plaintiff's employment.

94.    The Plaintiff's rejection of this sexual harassment, as aforesaid, was used as the basis for employment decisions adversely affecting the Plaintiff.

95.    The sexual harassment, as aforesaid, had the purpose and/or effect of substantially interfering with the Plaintiff's performance of her work.

96.    The sexual harassment, as aforesaid, had the purpose and/or effect of creating an intimidating, hostile and offensive working environment for the Plaintiff.

97.    As a result of the said conduct, in violation of Section 46a-60(a)(8), as aforesaid, the Plaintiff has suffered and will continue to suffer damages, including but not limited to, physical injury, mental and emotional distress, humiliation and embarrassment, anxiety, and attorney's fees.

X.    **COUNT TEN: Violation of Title VII - As to Defendant Cockayne**

1-91.    Paragraphs 1 – 91 of the First Count are hereby made paragraphs 1-91 of this Tenth Count as if fully set forth herein.

92.    By the above acts, the Defendant created a sexually hostile, offensive and intimidating work environment.

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

93.    By the above acts, the Defendant subjected the Plaintiff to unlawful discrimination based upon her sex.

XI.    **COUNT ELEVEN**: Intentional Infliction of Emotional Distress - As to Defendant Cockayne

1-91.    Paragraphs 1 – 91 of the First Count are hereby made paragraphs 1-91 of this Eleventh Count as if fully set forth herein.

92.    The Defendant intended to inflict emotional distress upon the Plaintiff.

93.    The Defendant knew or should have known that his conduct would cause the Plaintiff to suffer emotional distress.

94.    The emotional distress caused by the Defendant was extreme and outrageous.

95.    As a result of these actions, the Plaintiff suffered and has continued to suffer, severe emotional distress, embarrassment and humiliation.

XII.    **COUNT TWELVE**: Invasion of Privacy - As to Defendant Cockayne

1-91.    Paragraphs 1 – 91 of the First Count are hereby made paragraphs 1-91 of this Twelfth Count as if fully set forth herein.

92.    All of the acts described herein were committed by the Defendant within the scope of his employment with the Defendant.

93.    The conduct, as described above, invaded Plaintiff's privacy by intruding upon her seclusion in a manner that would have been highly offensive to a reasonable person.

34

XIII.   **COUNT THIRTEEN**: Aiding and Abetting in Violation of C.G.S. Section 46a-60(a)(5) - As to Defendant Cockayne

1-91.   Paragraphs 1 – 91 of the First Count are hereby made paragraphs 1-91 of this Thirteenth Count as if fully set forth herein.

92.   At all times relevant hereto, the Defendant has been employed and/or is an elected official of the City of Bristol, as the Mayor or as a City Councilor.

93.   The Defendant commenced a campaign of unlawful discrimination, sexual harassment, intimidation, retaliation, threatening and discrimination against the Plaintiff because of her gender.

94.   The Defendant did aid, abet, incite, compel and coerce, either expressly or tacitly, the commission of unlawful discrimination, sexual harassment, intimidation, threatening and discrimination against the Plaintiff because of her gender and in retaliation for the Plaintiff's complaints of the same to the Bristol Police Department, the CHRO and the EEOC, in violation of C.G.S. Section 46a-60(a)(5).

95. As a result of the Defendant's violation of C.G.S. Section 46a-60(a)(5), as aforesaid, the Plaintiff has suffered and will continue to suffer damages, including but not limited to, physical injury, mental and emotional distress, humiliation and embarrassment, anxiety, and attorney's fees.

XIV.   **COUNT FOURTEEN**: Aiding and Abetting in Violation of C.G.S. Section 46a-60(a)(5) - As to Defendant Ferguson

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

1-91.   Paragraphs 1 – 91 of the First Count are hereby made paragraphs 1-91 of this Fourteenth Count as if fully set forth herein.

92.   At all times relevant hereto, the Defendant has been employed by City of Bristol as the Personnel Director.

93.   The Defendant commenced a campaign of unlawful discrimination, sexual harassment, intimidation, retaliation, threatening and discrimination against the Plaintiff because of her gender.

94.   The Defendant did aid, abet, incite, compel and coerce, either expressly or tacitly, the commission of unlawful discrimination, sexual harassment, intimidation, threatening and discrimination against the Plaintiff because of her gender and in retaliation for the Plaintiff's complaints of the same to the Bristol Police Department, the CHRO and the EEOC, in violation of C.G.S. Section 46a-60(a)(5).

95.   As a result of the Defendant's violation of C.G.S. Section 46a-60(a)(5), as aforesaid, the Plaintiff has suffered and will continue to suffer damages, including but not limited to, physical injury, mental and emotional distress, humiliation and embarrassment, anxiety, and attorney's fees.

## XV.   <u>COUNT FIFTEEN</u>: Invasion of Privacy - As to Defendant Ferguson

1-91.   Paragraphs 1 – 91 of the First Count are hereby made paragraphs 1-91 of this Fifteenth Count as if fully set forth herein.

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

92.    All of the acts described herein were committed by the Defendant within the scope of her employment with the Defendant.

93.    The conduct, as described above, invaded Plaintiff's privacy by intruding upon her seclusion in a manner that would have been highly offensive to a reasonable person.

XVI.    **COUNT SIXTEEN**: Aiding and Abetting in Violation of C.G.S. Section 46a-60(a)(5) - As to Defendant Krawiecki

1-91.    Paragraphs 1 – 91 of the First Count are hereby made paragraphs 1-91 of this Sixteenth Count as if fully set forth herein.

92.    At all times relevant hereto, the Defendant has been employed by City of Bristol as the Corporation Counsel.

93.    The Defendant commenced a campaign of unlawful discrimination, sexual harassment, intimidation, retaliation, threatening and discrimination against the Plaintiff because of her gender.

94.    The Defendant did aid, abet, incite, compel and coerce, either expressly or tacitly, the commission of unlawful discrimination, sexual harassment, intimidation, threatening and discrimination against the Plaintiff because of her gender and in retaliation for the Plaintiff's complaints of the same to the Bristol Police Department, the CHRO and the EEOC, in violation of C.G.S. Section 46a-60(a)(5).

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

95.     As a result of the Defendant's violation of C.G.S. Section 46a-60(a)(5), as aforesaid, the Plaintiff has suffered and will continue to suffer damages, including but not limited to, physical injury, mental and emotional distress, humiliation and embarrassment, anxiety, and attorney's fees.

## XVII. <u>COUNT SEVENTEEN</u>: Aiding and Abetting in Violation of C.G.S. Section 46a-60(a)(5) - As to Defendant Cockayne Lamarre

1-91.   Paragraphs 1 – 91 of the First Count are hereby made paragraphs 1-91 of this Seventeenth Count as if fully set forth herein.

92.     At all times relevant hereto, the Defendant was an agent of the City of Bristol, serving in the capacity as an appointed official.

93.     The Defendant commenced a campaign of unlawful discrimination, sexual harassment, intimidation, retaliation, threatening and discrimination against the Plaintiff because of her gender.

94.     The Defendant did aid, abet, incite, compel and coerce, either expressly or tacitly, the commission of unlawful discrimination, sexual harassment, intimidation, threatening and discrimination against the Plaintiff because of her gender and in retaliation for the Plaintiff's complaints of the same to the Bristol Police Department, the CHRO and the EEOC, in violation of C.G.S. Section 46a-60(a)(5).

GOLD & LEVY · ATTORNEYS AT LAW · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

95. As a result of the Defendant's violation of C.G.S. Section 46a-60(a)(5), as aforesaid, the Plaintiff has suffered and will continue to suffer damages, including but not limited to, physical injury, mental and emotional distress, humiliation and embarrassment, anxiety, and attorney's fees.

WHEREFORE, Plaintiff claims judgment against the Defendants as follows:

1.   Back pay, front pay and benefits, in an amount to be determined with interest from the date said sums were due;

2.   Compensatory damages in an amount to be determined;

3.   Punitive damages in an amount to be determined;

4.   Attorney's fees and costs of this action; and,

5.   Such other further relief as the Court deems necessary and proper.

THE PLAINTIFF:

By: *Katherine L. Matthews /s/ 425049*
Katherine L. Matthews, Esq.
Her Attorney
Gold & Levy
21 Oak St., Ste. 300
Hartford, CT 06106
860-549-5152

39

## STATEMENT OF AMOUNT IN DEMAND

The amount, legal interest or property in demand is not less than FIFTEEN THOUSAND DOLLARS ($15,000.00), exclusive of interest and costs.

**GOLD & LEVY** · *ATTORNEYS AT LAW* · 21 OAK STREET, SUITE 300 · HARTFORD, CT 06106 · (860) 549-5152 · JURIS NO. 100291

# STATE OF CONNECTICUT
# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Noelle Bates
**COMPLAINANT**                                    CHRO No. 1630607

vs.

City of Bristol                                    EEOC No. 16A-2016-01509
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

**DATE:** March 8, 2017

Tanya A. Hughes, Executive Director

Service:
Complainant's attorney:  kmatthews@goldlevy.com
Respondent's attorney:  rpech@metzlaz.com

# STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Noelle Bates
**COMPLAINANT**

CHRO No. 1730162

vs.

Kenneth Cockayne
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

**DATE:** March 8, 2017

Tanya A. Hughes, Executive Director

Service:
Complainant's attorney:   kmatthews@goldlevy.com
Respondent's attorney:   rpech@metzlaz.com

# STATE OF CONNECTICUT
# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Noelle Bates
**COMPLAINANT**

CHRO No. 1730159

VS.

Cindy Cockayne LaMarre
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

**DATE:** March 8, 2017

Tanya A. Hughes, Executive Director

Service:
Complainant's attorney:   kmatthews@goldlevy.com
Respondent's attorney:   rpech@metzlaz.com

# STATE OF CONNECTICUT
# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

<u>Noelle Bates</u>
**COMPLAINANT**

CHRO No. 1730161

vs.

<u>Diane Ferguson</u>
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

<u>The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.</u>

**DATE:** March 8, 2017

Tanya A. Hughes, Executive Director

Service:
Complainant's attorney:   kmatthews@goldlevy.com
Respondent's attorney:   rpech@metzlaz.com

# STATE OF CONNECTICUT
# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Noelle Bates
**COMPLAINANT**

CHRO No. 1730160

vs.

Edward Krawiecki
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

**DATE:** March 8, 2017

Tanya A. Hughes, Executive Director

Service:
Complainant's attorney:   kmatthews@goldlevy.com
Respondent's attorney:   rpech@metzlaz.com

STATE OF CONNECTICUT:

: SS. WEST HARTFORD            June 6, 2017

COUNTY OF HARTFORD   :


THEN and by virtue hereof and by direction of the plaintiff's

Attorney, I made due and legal service of the within original Writ, Summons

and Complaint by leaving ten true and attested copies with and in the hands of

DAWN LABELLA, Assistant City clerk in said City of Bristol whom is duly

authorized to accept service on behalf of each of the within named defendants:

**CITY OF BRISTOL**
**KENNETH COCKAYNE**
**DIANE FERGUSON**
**EDWARD KRAWIECKI**
**COCKAYNE LAMARRE, CINDY**

At 111 N. Main Street, Bristol, CT.

THE WITHIN IS THE ORIGINAL WRIT, SUMMONS AND
COMPLAINT WITH MY DOINGS HEREON ENDORSED.


FEES:                              ATTEST:

SERVICE        $ 40.00
TRAVEL         $ 24.60            SCOTT M. KRAIMER
ENDORSEMENTS   $ 12.40           STATE MARSHAL
PAGES          $470.00           HARTFORD COUNTY

TOTAL          $547.00