UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NOELLE BATES,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF BRISTOL, KENNETH COCKAYNE, CINDY COCKAYNE LAMARRE, EDWARD KRAWIECKI, JR., AND DIANE FERGUSON,<br><br>    Defendants. | No. 3:17-CV-01066-MPS |

**RULING ON MOTION TO DISMISS**

### I.   Introduction

Noelle Bates, a legal secretary employed by the City of Bristol, sued the City and city officials for violations of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, and Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). (*see* ECF No. 1-1). Bates claims that she was sexually harassed and retaliated against for complaining about such harassment. Defendants move to dismiss all 17 counts of Bates' complaint under Fed. R. Civ. P. 12(b)(1), 12(b)(5), and 12(b)(6). Defendants argue that Plaintiff failed (1) to bring her action in a timely manner, (2) to exhaust administrative remedies, (3) to serve process properly on one defendant, and (4) to file her administrative complaint in a timely manner.

For the following reasons, Defendants' Motion to Dismiss is GRANTED as to Counts 5, 6, 7, 9, 10, 11, 12, 13, 15, and 17. Defendants' Motion to Dismiss is DENIED as to Counts 1, 2, 3, 4, 8, 14, and 16.

1

## II. Background

The following recitation of the facts is taken from Bates' complaint, along with the exhibits attached to the parties' briefs.

### A. Factual Allegations

Bates has been employed as a legal secretary in the office of the Bristol Corporation Counsel since 2009. (ECF No. 1-1 at ¶¶ 5–6). Defendant Kenneth Cockayne has been the Mayor of the City of Bristol, Connecticut ("City"), since November of 2013. (*Id.* at ¶¶ 10, 31). Defendant Edward Krawiecki, Jr. is the Corporation Counsel for the City. (*Id.* at ¶ 11). Defendant Diane Ferguson is the Personnel Director for the City. (*Id.* at ¶ 9). Defendant Cindy Cockayne Lamarre is an appointed official of the City and serves as a member of the Bristol Zoning Commission (*Id.* at ¶ 12). Bates claims that she was sexually harassed by Cockayne and subsequently retaliated against for complaining about such harassment. (*see* ECF No. 1-1). In her complaint, Bates describes several encounters with Cockayne, including one occurring in November of 2011 when Cockayne allegedly grabbed Bates and forced her into his lap while he watched a pornographic video in his office. (*Id.* at ¶ 24). A second occurred on October 24, 2013 when Cockayne allegedly put his hand up Bates' skirt at a golf event at the Chippanee Golf Club. (*Id.* at ¶ 27). Bates' complaint also includes several comments made by Cockayne over the course of her employment. In August of 2011, Cockayne allegedly invited Bates to accompany him to a park "just to talk." (*Id.* at ¶ 19). In 2012 and 2013, Cockayne allegedly told Bates that he could freely sexually harass her because he was an elected official. (*Id.* at ¶¶ 25, 32).

On November 11, 2015, Bates notified her colleague of Cockayne's behavior at the golf event. (*Id.* at ¶ 42). The colleague then notified Ferguson and Krawiecki of Cockayne's behavior. *Id.* Bates claims that she was subsequently retaliated against for making this complaint against

Cockayne. (*Id.* at ¶¶ 45–89). She alleges, for example, that she received threatening letters reminding her of her at-will employment status, that she was video-taped by Cockayne and Ferguson, that she was told on numerous occasions that Cockayne wanted to fire her, that her work and usage of her WestLaw and CLEAR accounts were monitored, and that a co-worker rifled through her desk. (*Id.* at ¶¶ 46, 53, 75, 81, and 89).

After Cockayne and Ferguson allegedly video-taped Bates, Bates met repeatedly with members of the Bristol Police Department. As a result of these meetings, Bates made a formal written statement regarding Cockayne's videotaping. (*Id.* at ¶¶ 54–70). Despite several requests, Bates was not able to obtain a copy of the incident report. (*Id.* at ¶ 70).

Bates' complaint also lists additional conduct by Cockayne, occurring from December 2015 through August 2016. (*Id.* at ¶¶ 53, 78, 83, and 87). For example, Cockayne allegedly told Bates that he was going to tell lies to Bates' husband, made defamatory comments about Bates, read a public statement at a City Council meeting regarding a consensual sexual relationship with Bates, and made defamatory and sexual comments about Bates to her co-worker. (*Id.*)

In 2016, the City of Bristol retained a consultant, Attorney Michael Rose, to investigate Bates' claims of sexual harassment and retaliation by Cockayne. (*Id.* at ¶ 73). Bates overheard her co-workers discussing the investigation by Attorney Rose and learned that Cockayne was making defamatory statements about her. (*Id.* at ¶ 78).

### B. Procedural History

On June 6, 2016, Bates filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") against the City. On August 22, 2016, Bates amended the complaint against the City, and on September 21, 2016, she filed four new complaints against the

additional defendants in this case—Cockayne, Krawiecki, Ferguson, and Cockayne Lamarre. All five complaints claimed violations of the CFEPA and Title VII. (*see* ECF No. 25-1 – 25-5). On March 8, 2017, the CHRO issued releases of jurisdiction for all five complaints. (*see* ECF No. 25-6). Subsequently, Bates brought this action in Connecticut Superior Court, claiming violations of the CFEPA and Title VII. (*see* ECF No. 1-1). A State Marshal effected service on the Defendants by leaving the summons and complaint at City Hall on June 6, 2017, and Bates filed the complaint in court on June 30, 2017. (ECF No. 1-1 at 49). Defendants later removed the case to this Court (*see* ECF No. 1), and filed a Motion to Dismiss all 17 counts in Plaintiff's complaint.

### C. Legal Theories

Counts 1 and 7 are for violations of Conn. Gen. Stat. Sec. 46a-60(a)(1) by the City and Cockayne, respectively. Counts 2 and 8 are for violations of Conn. Gen. Stat. Sec. 46a-60(a)(4) by the City and Cockayne, respectively. Counts 3 and 9 are for violations of Conn. Gen. Stat. Sec. 46a-60(a)(8) by the City and Cockayne, respectively. Counts 4 and 10 are for violations of Title VII by the City and Cockayne, respectively. Counts 5 and 11 are for intentional infliction of emotion distress by the City and Cockayne, respectively. Counts 6, 12, and 15 are for invasion of privacy by the City, Cockayne, and Ferguson, respectively. Counts 13, 14, 16, and 17 are for aiding and abetting violations of Conn. Gen. Stat. Sec. 46a-60(a)(5) by Cockayne, Ferguson, Krawiecki, and Cockayne Lamarre, respectively.

### III. Legal Standard

#### A. Rule 12(b)(1): Motion to Dismiss for Lack of Subject Matter Jurisdiction

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks

omitted). The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The court construes the complaint liberally and accepts all factual allegations as true. *Ford v. D.C. 37 Union Local 1549,* 579 F.3d 187, 188 (2d Cir. 2009).

### B. Rule 12(b)(5): Motion to Dismiss for Insufficient Service of Process

A defendant may move to dismiss under Fed. R. Civ. P. 12(b)(5) for insufficient service of process. When a defendant challenges service of process, "the burden of proof is on the plaintiff to show the adequacy of service." *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 2d 654, 658 (S.D.N.Y. 1997).

### C. Rule 12(b)(6): Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted

Under Fed. R. Civ. P. 12(b)(6), a court must determine whether the Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under *Twombly*, the Court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss. *Id.* at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008) (internal quotation marks omitted). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory

5

allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, No. 09-cv-1412, 2010 U.S. Dist. LEXIS 37795, at *2–3 (S.D.N.Y. Apr. 9, 2010) (internal quotation marks omitted). In deciding a Rule 12(b)(6) motion, I may consider documents attached to, integral to, or incorporated by reference in the complaint. *See* Fed. R. Civ. P. 10(c); *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotations omitted).

**IV.     Discussion**

The Plaintiff's September 18, 2017 Objection to Motion to Dismiss indicated that she did not object to the dismissal of Counts 5, 6, 7, 9, 10, 11, 12, and 15. (*see* ECF No. 28-1 at 1). The Objection also indicated that the plaintiff did not object to the dismissal of Count 17 – the only count against Cockayne Lamarre, which Defendants have challenged for insufficient service of process – but Plaintiff later filed a supplemental Objection in which she reversed her position as to Count 17 based on a second effort to serve Cockayne Lamarre. (ECF No. 31-1). Accordingly, I dismiss Counts 5, 6, 7, 9, 10, 11, 12, and 15, and I address the Defendants' Rule 12(b)(5) challenge to Count 17 below.

The remaining counts are thus Counts 1, 2, 3, and 4 against the City, Counts 8 and 13 against Cockayne, Count 14 against Ferguson, Count 16 against Krawiecki, and Count 17 against Cockayne Lamarre. For the reasons discussed below, I dismiss Counts 13 and 17 but otherwise deny the motion to dismiss.

    **A. Counts Challenged Under 12(b)(1) for Lack of Subject Matter Jurisdiction**

        i. <u>Counts 1, 2, 3, 8, 13, 14, and 16 were Timely Brought</u>

Defendants argue that this Court lacks subject matter jurisdiction over Counts 1, 2, 3, 8, 13, 14, and 16 because Plaintiff did not bring her complaint in the time required by Conn. Gen. Stat. Sec. 46a-101(e).[1]

A party who files a complaint with the CHRO for employment discrimination may sue in court after receiving a release of jurisdiction from the CHRO:

> Any person who has timely filed a complaint with the [Commission on Human Rights and Opportunities] in accordance with section 46a-82 and who has obtained a release from the commission in accordance with section 46a-83a or 46a-101, may bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred, the judicial district in which the respondent transacts business, or the judicial district in which the complainant resides, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford.

Conn. Gen. Stat. Sec. 46a-100. Section 46a-101 requires that "any action brought by the complainant in accordance with [S]ection 46a-100 shall be brought no later than ninety days after the date of the receipt of the release from the commission." Conn. Gen. Stat. Sec. 46a-101(e). At issue in the present case is what constitutes bringing an action in the Superior Court under Conn. Gen. Stat. Secs. 46a-100 and 46a-101(e). Bates asserts that an action is "brought" on the date the defendant is served, while Defendants contend that an action is "brought" on the date the complaint is filed in Superior Court.

To support their contention, Defendants rely heavily upon *Wright v. Teamsters Local 559*, 1 A.3d 207 (Conn. App. 2010) in which the Connecticut Appellate Court construed the CFEPA's

---

[1] As discussed in more detail in Section (IV)(B)(i) of this opinion, it is unsettled in Connecticut whether a failure to comply with the 90-day time limit in Conn. Gen. Stat. Sec. 46a-101(e) affects the court's subject matter jurisdiction or whether that limit is simply a "mandatory" requirement subject to waiver and tolling. Because both parties discuss the issue with respect to Counts 1, 2, 3, 8, 13, 14, and 16 under the rubric of Fed. R. Civ. P. 12(b)(1), however, and because the proper procedural characterization of a failure to comply with the 90-day limit is immaterial for my disposition of those counts, I follow the parties' lead and discuss this issue under Rule 12(b)(1).

7

similarly worded two-year time limit for bringing actions after the filing of the CHRO complaint. *See* Conn. Gen. Stat. Sec. 46a-102 ("Any action brought in accordance with section 46a-100 shall be brought within two years of the date of filing of the complaint with the commission . . . ."). In *Wright*, the court stated that "Section 46a-102 requires a plaintiff to *file* his or her action in the Superior Court within two years of filing a commission complaint . . ." 1 A.3d at 209-10 (emphasis added). That statement, however, was dicta, as the issue before the court in *Wright*

> was not whether the Superior Court complaint was timely filed under § 46a-102 when using the original commission complaint to start the running of the statute of limitations, but rather, whether the plaintiff's allegations of age discrimination, raised for the first time in [an] amended commission complaint, related back to his original commission complaint under the relation back doctrine and, if not, whether this amendment extended the statutory time to bring the action in Superior Court pursuant to § 46a-102.

*Id.* at 210. Indeed, the plaintiff in *Wright* did "not dispute that § 46a-102 required him to file his complaint in Superior Court within two years of filing his administrative complaint with the commission." *Id.* n. 4. Further, the brevity of the court's statement about "fil[ing]" an action and the lack of any supporting analysis cast doubt on whether the court even intended to convey a considered conclusion that "an action brought" in Section 46a-102 means an "action filed" in court. Such a conclusion would run counter to a long line of Connecticut cases holding, in a variety of contexts, that commencing or "bringing" an action under Connecticut law means serving the summons and complaint on the defendant. *See, e.g. Rocco v. Garrison*, 268 Conn. 541, 357–58 (2004) ("We begin our analysis by noting that there is no substantive distinction between the terms 'bringing' an action and 'commencing' an action. We further note that, under the law of our state, an action is commenced not when the writ is returned, but when it is served upon the defendant.") (internal citations, footnote, and quotation marks omitted); *Rana v. Ritacco*, 236 Conn. 330, 337 (1996) ("This court has long held that an action is brought once the writ,

summons, and complaint have been served upon a defendant."). It seems unlikely that the *Wright* court read the term "brought" in Conn. Gen. Stat. Sec. 46a-102 to break with such well-established law without giving so much as a nod to it. Not surprisingly, then, neither Connecticut trial courts nor this Court has interpreted *Wright* to work such a dramatic shift in Connecticut law. In *Davis v. Smith*, the Superior Court stated as follows:

> "[T]he Connecticut Supreme Court has long adhered to the rule that only actual service upon the defendant will satisfy the state statutes of limitations." *Converse v. General Motors Corp.*, 893 F.2d 513, 515 (2d Cir. 1990) (citing *Consolidated Motor Lines, Inc. v. M&M Transportation Co.*, 128 Conn. 107, 20 A.2d 621 (1941)). "It is well settled that in Connecticut (unless otherwise specified by the legislature) a case is considered 'brought' for purposes of a statute of limitations on the date of service of the complaint upon the defendant . . . " *Kotec v. Japanese Educational Institute of N.Y*, 321 F. Supp. 2d 428, 431 (D. Conn. 2004). Absent from § 46a-102 is any provision setting forth the manner in which a claim is considered "brought," and the defendants' interpretation of the Appellate Court's analysis of § 46a-102 in *Wright* contradicts well settled principles of Connecticut law.

*Davis v. Smith*, 2014 WL 6462244, at *5 (Conn. Super. Ct. Oct. 15, 2014). Further, the court noted that "[s]ince *Wright*, federal courts applying Connecticut law have continued to use the date of service upon the defendant as the date the action was brought as conforming to state law when deciding statute of limitations questions pursuant to § 46a-102." *Id.* at *12–13; *see, e.g. Farzan v. Bridgewater Assocs.*, 2017 WL 354685 at *9 (D. Conn. Jan. 24, 2017) (in case involving 90-day period in Section 46a-101(e), noting that "[u]nder Connecticut law a case is 'brought' on the date the complaint is served on the defendant."); *Hannah v. Wal-Mart Stores, Inc.*, 969 F. Supp. 2d 229, 232 (D. Conn. 2013) (noting that a case is considered brought for purposes of a statute of limitations on the date of service upon the defendant); *Shlafer v. Wackenhut Corp.*, 837 F. Supp. 2d 20, 24 (D. Conn. 2011) (holding that in order to comply with the statute of limitations under Conn. Gen. Stat. Sec. 46a-102, a defendant must be served within two years of the release from the CHRO).

Following these cases, I interpret the word "brought" in Conn. Gen. Stat. Sec. 46a-101(e) to mean "served on the defendant." As set forth above, the CHRO released jurisdiction of Bates' claims on March 8, 2017. The state marshal effected service of the Plaintiff's complaint on June 6, 2017. Under Conn. Gen. Stat. Section 52-593a, a cause of action is timely if a state marshal receives the process to be served within the time limit required by statute. In this case, the State Marshal received the process to be served by June 6, 2017, the ninetieth day from March 8, 2017. Therefore, with the exception of the service upon Cockayne Lamarre, which is addressed below, Bates served the Defendants within the time period required by statute, and the action was timely "brought" under Conn. Gen. Stat. Sec. 46a-101(e).[2]

> ii. <u>Counts 13, 14, and 16: Plaintiff Adequately Exhausted Administrative Remedies as to Counts 14 and 16 But Count 13 Fails</u>[3]

Bates contends that Ferguson, Cockayne, and Krawiecki aided and abetted Cockayne in his discriminatory and retaliatory conduct. Although no aiding and abetting claim was expressly set forth in Bates' CHRO complaints, the factual allegations of those complaints are sufficiently

---

[2] Defendants also argue that the addition of the phrase "in the superior court" after "bring an action" in Section 46a-100 supports their position that "bringing" an action means filing it rather than serving it. (*See* Conn. Gen. Stat. Sec. 46a-100: " . . . may bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred, the judicial district in which the respondent transacts business or the judicial district in which the complainant resides."). This is not persuasive either. The "in the superior court" language in Section 46a-100 amounts to a venue provision specifying the judicial districts in which the action may be brought. It does not suggest that the General Assembly intended to alter Connecticut's well-established rule that actions are brought when they are served on the defendant.

[3] This Court has treated the failure to exhaust administrative remedies under the CFEPA as a jurisdictional defect even though it has treated the failure to exhaust federal discrimination claims as a non-jurisdictional defect. *See Anderson v. Derby Bd. of Ed.*, 718 F. Supp. 2d 285, 272 (D. Conn. 2010). I thus consider this issue under Fed. R. Civ. P. 12(b)(1).

related to her aiding and abetting claims in this Court and, therefore, she did not need expressly to exhaust her administrative remedies with regard to those claims.

Conn. Gen. Stat Sec. 46a-60(a)(5) states that "it shall be discriminatory action in violation of this section for any person, whether an employer or employee or not, to aid, abet, incite, compel, or coerce the doing of any act declared to be a discriminatory employment practice or attempt to do so . . . " Counts 14 and 16 set forth aiding and abetting claims against Ferguson and Krawiecki, respectively, in connection with Cockayne's discriminatory and retaliatory conduct. (ECF No. 1-1 at 38–41). Bates admits that she did not expressly plead a Conn. Gen. Stat Sec. 46a-60(a)(5) cause of action against Ferguson and Krawiecki in her CHRO complaints. (ECF No. 28-1 at 7). However, there is an

> exception [to exhaustion that] permits the court to exercise jurisdiction over a charge that was not presented during an administrative proceeding as long as it is reasonably related to the conduct complained of during the administrative proceedings, such that the claim could have been reasonably expected to grow out of the original charges.

*Longo v. Allied Mech. Servs., LLC*, 2013 WL 3766919, at *3 (Conn. Super. Ct. June 20, 2013). The facts underlying Bates' aiding and abetting claims against Ferguson and Krawiecki were alleged in the CHRO complaint. Specifically, the CHRO complaint details multiple encounters between Bates and Ferguson in which (among other things) Ferguson told Bates that nothing could be done about Cockayne's behavior, threatened Bates with her at-will employee status, discussed Cockayne's desire to fire Bates, and accompanied Cockayne while he recorded a video of her while all of them were outside. (ECF No. 1-1 at ¶¶ 53, 55, 56, 58, 59, 60, 61, 65, 66, 70, 75, 79, 94, 98, 101, 103, 117, and 118). The complaint also describes encounters between Bates and Krawiecki in which (among other things) Krawiecki threatened Bates, told Bates that Cockayne wanted her fired, and verbally abused Bates. (ECF No. 1-1 at ¶¶ 33, 46, 47, 49, 51, 96, 99, and

11

100). Bates' charge of aiding and abetting is reasonably related to her allegations against Ferguson and Krawiecki in the CHRO proceedings because those allegations show that Ferguson and Kraweicki were helping Cockayne to act in a discriminatory manner. Therefore, the exception to the exhaustion doctrine applies because the aiding and abetting claim could have reasonably been expected to grow out of the original CHRO charges.

The aiding and abetting claim against Cockayne in Count 13, however, fails as a matter of law, because Cockayne could not have aided and abetted his own misconduct. In *Bolick v. Alea Group Holdings, Ltd.*, this Court looked to the dictionary definition of aiding and abetting:

> the dictionary defines "abettor" as a person who abets (incites or encourages) an offender. As a legal definition, "aid and abet is not a needless redundancy, . . . it is a term of art meaning to assist the perpetrator of the crime while sharing the requisite intent . . . By its plain language, this provision appears to contemplate liability towards a party who in some way helps or compels another to act in a discriminatory manner.

278 F. Supp. 2d 278, 282 (D. Conn. 2003) (internal citations and quotation marks omitted). Count 13 alleges violation of Conn. Gen. Stat Sec. 46a-60(a)(5) by Cockayne. (ECF No. 1-1 at 38). Cockayne is the only Defendant who allegedly engaged in sexual harassment and sexual discrimination against Bates, however, and therefore cannot simultaneously be an aider and abettor. *See Bolick v. Alea Group Holdings, Ltd.*, 278 F. Supp. 2d 278, 282 (D. Conn. 2003) (holding that "aiding and abetting liability . . . requires that the individual assists another person in discriminatory conduct and a sole perpetrator cannot be held liable."). Thus, the aiding and abetting claim against Cockayne fails.

Accordingly, the Defendants' Motion to Dismiss is granted as to Count 13 and denied as to Counts 14 and 16.

### B. Count 17 Challenged Under 12(b)(5) for Insufficient Service of Process

i. Plaintiff's Service of Process on Defendant Cockayne Lamarre was Untimely

Plaintiff originally attempted service on Cockayne Lamarre on June 6, 2017 through a state marshal. (*see* ECF No. 1-1 at 49). The marshal, however, erroneously served Cockayne Lamarre at the Bristol City Hall, rather than at her home address, despite the fact that she is not a city employee. After Defendants raised this point in their August 25, 2017 Motion to Dismiss, Plaintiff agreed that Count 17 could be dismissed in her Objection to Motion to Dismiss. (*see* ECF No. 28). It was not until October 13, 2017, in her Supplemental Objection to Motion to Dismiss, that Plaintiff objected to the dismissal of Count 17 and revealed that, on October 3, 2017, she had made a second effort to serve Cockayne Lamarre, this time at her home address. (*see* ECF No. 31-1).

Defendants contend, in their Supplemental Opposition brief, that service of process on Cockayne Lamarre remains improper and that Count 17 should be dismissed. First, Defendants argue that the October 3 service upon Cockayne Lamarre was improper under Fed. R. Civ. P. 4 because the summons did not bear the signature of the clerk or the seal of the court. Second, Defendants return to the argument made above in Section (IV)(A)(i), namely, that an action is brought on the date the action is filed in court, rather than the date the action is served on the defendant. Defendants argue, therefore, that Plaintiff did not bring the action in a timely fashion because the date of filing of the complaint in state court (June 30, 2017) was more than ninety days after the release from the CHRO (March 8, 2017). Finally, Defendants argue that, in any event, the October 3 service upon Cockayne Lamarre was not timely under Conn. Gen. Stat. Sec. 46a-101(e) because it occurred more than ninety days after the receipt of the release from the CHRO.

Fed. R. Civ. P. 4, governs the content, issuance, and service of a summons. *See* Fed. R. Civ. P. 4. Under Rule 4(b), "[o]n or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal." *Id.* 4(b). "If the summons is properly completed, the clerk must

sign, seal, and issue it to the plaintiff for service on the defendant." *Id.*; *see also* Fed. R. Civ. P. 4(a)(1)(F) & (G) (requiring that a summons be signed by the clerk and bear the court's seal). "A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) [90 days] and must furnish the necessary copies to the person who makes service." Fed. R. Civ. P. 4(c)(1).

With respect to Defendants' first argument, technical errors on a summons do not automatically render service on a defendant insufficient. *See Durant v. Traditional Invs., Ltd.*, 1990 WL 33611, at *4 (S.D.N.Y. Mar. 22, 1990) ("When the error in the summons goes to form rather than substance, amendment . . . should be freely granted . . . as courts should not deny a plaintiff her day in court due to technical imperfections in service."); *Macaluso v. N.Y.S. Dep't of Envtl. Conservation*, 115 F.R.D. 16, 17 (E.D.N.Y. 1986) (stating that "amendments to process are freely given because courts do not wish to deny plaintiffs their day in court for failure to observe mere technicalities."). A court may, however, deny amendment of service if the technical error results in prejudice towards the defendant or demonstrates a flagrant disregard of Fed. R. Civ. P. 4. *Deluca v. Access IT Group, Inc.*, 695 F. Supp. 2d 54, 65 (S.D.N.Y. 2010).

District courts within the Second Circuit have split as to whether an unsigned summons not bearing the Court's seal qualifies as a technical defect or a flagrant disregard of Rule 4. *Compare Krieger v. Am. Express Fin. Advisors*, 2000 WL 207119, at *4 (W.D.N.Y. Feb. 16, 2000) (denying defendant's motion to dismiss for insufficient service of process where plaintiff served an unsigned and unsealed summons); *Durant v. Traditional. Invest., Ltd.,* 1990 WL 33611, at *4 (S.D.N.Y. Mar. 22, 1990) (holding that a summons without clerk's signature and seal was not a flagrant substantive error because the defendant received sufficient notice and was not prejudiced), *with Macaluso v. N.Y.S. Dep't of Envtl. Conservation*, 115 F.R.D. 16, 18 (E.D.N.Y. 1986) (granting

motion to dismiss for insufficient service of process because an unsealed, unsigned summons was not a mere technical defect, but rather a "complete disregard for the requirements of process set forth clearly and concisely in Rule 4.")

I need not take sides in this debate, however, because I agree with the Defendants' third argument that Plaintiff's service on Cockayne Lamarre was untimely under Conn. Gen. Stat. Sec. 46a-101(e).[4] As discussed above, Conn. Gen. Stat. Sec. 46a-101(e) requires that an action be brought within ninety days of receipt of a release from the CHRO, and an action is brought when it is served on the defendant. As noted, the CHRO released jurisdiction on March 8, 2017, and the second attempt of service on Cockayne Lamarre was not made until October 3, 2017 – well over the ninety days set forth in Section 46a-101(e). Further, the Plaintiff cannot invoke the savings statute, Conn. Gen. Stat Sec. 52-593, for timely delivery to the state marshal because that statute requires service within thirty days of delivery to the marshal; the second attempt at service on Cockayne Lamarre was made by a different marshal and took place more than thirty days after delivery of the original summons to the first marshal.

It is unsettled in Connecticut whether failure to comply with the 90-day limit in Conn. Gen. Stat. Sec. 46a-101(e) is a jurisdictional defect, although recent Connecticut trial court decisions have held that it is not and that it is subject to equitable tolling. *See e.g. Scott v. State Dept. of Transp.*, 2016 WL 3912470, *5–8 (Conn. Super. Ct. June 13, 2016) (in light of a lack of controlling appellate decisions, the court held that "§ 46a-101(e) should not be construed as a jurisdictional bar, but should be construed as a mandatory requirement that is subject to consent, waiver, and equitable tolling."); *see also Sirica v. Connecticut Water Co.*, 2015 WL 897735 (Conn. Super. Ct.

---

[4] Technically, this means the claim fails as a matter of law rather than for insufficient service of process.

Feb. 13, 2015) (holding that "the 90-day time limitation prescribed by § 46a–101(e) was not subject matter jurisdictional and, thus, was subject to waiver and equitable tolling."); *but see Roma v. Urgent Care of Brookfield, LLC,* 2014 WL 660747 (Conn. Super. Ct. January 27, 2014); *Spignolio v. Stark Carpet Corp.,* 2013 WL 6989429 (December 19, 2013); *Lloyd v. Connection, Inc.,* 2011 WL 7029772 (Conn. Super. Ct. December 21, 2011). Because I conclude that equitable tolling does not apply here in any event, I will assume for purposes of this decision that the ninety-day deadline in Section 46a-101(e) is not a jurisdictional bar.

Equitable tolling is a narrow doctrine. *See Williams v. CHRO*, 67 Conn. App. 316, 329 (2001) (noting that "[t]here is a strong tendency not to apply the doctrine of equitable tolling when a party is represented by an attorney" and that "usually, in employment discrimination cases, time limits will not be tolled absent some behavior of the employer designed to delay the filing of the complaint or fraud."). Federal case law on equitable tolling in employment cases—to which Connecticut courts often look when interpreting their own anti-discrimination laws—similarly treats the doctrine as an "extraordinary" exception to statutory time limits. *See Williams*, 257 Conn. at 278 ("The Second Circuit's case law on equitable tolling makes clear . . . that for equitable tolling to apply, the employer must prevent the employee in some extraordinary way from exercising her rights, or the employee must be actively misled by his employer and that conduct must be responsible for making the employee unaware of her [statutory] rights."); *see also Veltri v. Bldg. Serv. 32b-J Pension Fund,* 393 F.3d 318 (2d. Cir. 2004) ("Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances."). *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 558 (1974) (equitable tolling where plaintiff filed and served defective papers before the expiration of the statutory period.); *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231,

235 (1959) (plaintiff was induced to file later papers due to defendant's deception); *Pearl v. City of Long Beach*, 269 F.3d 76, 80 n.3 (2d. Cir. 2002) (defendant concealed existence of plaintiff's cause of action.).

The circumstances in the present case are not so "extraordinary" as to warrant equitable tolling of the 90-day deadline set by Conn. Gen. Stat. Sec. 46a-101(e). First, the record contains no evidence that Defendants acted in any way to prevent Plaintiff from exercising her rights. Second, Plaintiff was represented by counsel at all times throughout the proceedings. Further, the record indicates that Plaintiff's counsel was slow to correct the initial defective service made on June 6, 2017, and was not prevented from acting more promptly by extraordinary circumstances. It is true that the initial failure to serve Cockayne Lamarre properly appears to have been the fault of the state marshal – because the original state court summons properly identified Cockayne Lamarre's service address as her home address and yet the state marshal purported to serve her by leaving the summons and complaint at the Bristol city hall. That error, however, should have been apparent to Plaintiff's counsel shortly after June 6 – the date of the state marshal's original return – and could have been corrected in a matter of a few days instead of the four months it took here. Worse, even after Defendants pointed out the error in their August 25 motion to dismiss, Plaintiff's counsel still did not correct it – instead acknowledging in her September 18 objection that service was improper and that Count 17 should be dismissed. It was not until two weeks after filing her objection, on October 3, that plaintiff's counsel sought again to serve Cockayne Lamarre. And even then counsel failed to do so properly; the October 3 service involved a defective summons that had not been issued by the clerk's office or stamped with the Court's seal. Equitable tolling is not warranted in this case because, rather than exercising a reasonable level of diligence, Plaintiff's counsel has engaged in a slow-moving and ultimately defective effort to correct

17

improper service. Accordingly, the Motion to Dismiss is granted as to Count 17 because service upon Cockayne Lamarre was untimely under Conn. Gen. Stat. § 46a-101(e).

### C. Counts Challenged Under 12(b)(6) for Failure to State a Claim Upon Which Relief Can be Granted: Counts 1, 3, and 4 Were Timely Filed

The complaint alleges that Cockayne engaged in discriminatory and sexually harassing conduct within the time period required by statute and therefore the Defendants' motion to dismiss with regard to Counts 1, 3 and 4 is denied. Conn. Gen. Stat. Sec. 46a-82(f) requires that a discrimination complaint be filed with the CHRO within 180 days of the alleged discriminatory act. Counts 1 and 3 charge the City and Cockayne with sexual discrimination in violation of Conn. Gen. Stat. Sec. 46a-60(a)(1) and (8), respectively. (ECF No. 1-1 at 29 and 31). Count 4 charges the City with creating a hostile work environment in violation of Title VII. (ECF No. 1-1 at 32).

The Connecticut Supreme Court has held that sexually harassing conduct under Conn. Gen. Stat. Secs. 46a-60(a)(1) and (8) includes: (1) vulgar comments about a plaintiff's physical attributes; (2) statements about a plaintiff's sexual relations; and (3) sexually provocative comments made about a plaintiff to others. *Feliciano v. AutoZone, Inc.*, 316 Conn. 65, 88 (2015). Further, under CFEPA's continuing violation exception to the statute of limitations, "a discriminatory incident occurring within the charging period may implicate and thereby render timely incidents otherwise outside of the charging period." *Demoss v. Norwalk Bd. Of Educ.*, 2007 WL 3432986, at *4 (D. Conn. Nov. 14, 2007). "A continuing violation occurs where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Id.* at *11; *see also Ravenscroft v. Williams Scotsman, Inc.*, 2015 WL 1311332 at *3 (D. Conn. Mar. 23, 2015) (noting, in a discussion of hostile work

environment claim, that "a series of separate acts that collectively constitute one unlawful employment practice can qualify as a continuing violation.").

With respect to Counts 1 and 3, Defendants assert that the most recent sexually harassing conduct alleged in the complaint occurred in December of 2013, and that Bates did not file her original complaint with the CHRO until June 9, 2016, thereby rendering it untimely. In addition to the December 2013 conduct, however, Plaintiff's CHRO complaint also describes conduct that occurred from December 2015 through August 2016. Drawing all inferences in Bates' favor, I conclude that this additional conduct qualifies as sexual harassment under the description in *Feliciano* because it included sexual comments about Bates to others. (*See* ECF No. 1-1 at ¶¶ 52, 78, 83, and 87). Since Bates filed her original complaint with the CHRO on June 9, 2016, her complaint was filed within 180 days of the alleged discriminatory act as required by Conn. Gen. Stat. Sec. 46a-82(f). Further, specific instances of the Defendants' conduct that predated the 180-day period fall within the statute's reach because, under the continuing violation exception, they comprise part of ongoing discriminatory policies or practices. Therefore, I find that Bates filed her original complaint with the CHRO in a timely manner and Defendants' motion to dismiss as to Counts 1 and 3 is denied.

For similar reasons, Bates' Title VII claim against the City is also timely. Under 42 U.S.C. Sec. 2000e-5(e)(1) a party:

> that has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such [discriminatory employment] practice . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . .

42 U.S.C. Sec. 2000e-5(e)(1). Title VII is violated when a workplace is permeated with discrimination that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Kaytor v. Elec. Boat Corp.*, 609 F.3d

537, 546–48 (2d Cir. 2010). Drawing all reasonable inferences in Bates' favor, I find that her complaint describes conduct that meets this standard and, as shown above, includes discriminatory and retaliatory acts falling within the 300-day window. Thus, for reasons similar to those set forth in the discussion of Counts 1 and 3 above, Bates' complaint was filed with the CHRO within three hundred days of conduct prohibited by Title VII. Accordingly, Defendants' motion to dismiss is denied as to Counts 1, 3, and 4.

## V.     Conclusion

For the reasons discussed above, Defendants' Motion to Dismiss is GRANTED as to Counts 5, 6, 7, 9, 10, 11, 12, 13, 15, and 17. Defendants' Motion to Dismiss is DENIED as to Counts 1, 2, 3, 4, 8, 14, and 16.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut

March 26, 2018